EXHIBIT G

XAVIER BECERRA
Attorney General of California
DAMON MCCLAIN (209508)
Supervising Deputy Attorney General
NASSTARAN RUHPARWAR (263293)
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5500
Facsimile: (415) 703-3035
Damon.McClain@doj.ca.gov

HANSON BRIDGETT LLP
PAUL B. MELLO (179755)
SAMANTHA D. WOLFF (240280)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366
pmello@hansonbridgett.com

*Attorneys for Defendants*

PRISON LAW OFFICE
DONALD SPECTER (83925)
STEVEN FAMA (99641)
ALISON HARDY (135966)
SARA NORMAN (189536)
RANA ANABTAWI (267073)
SOPHIE HART (321663)
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Fax: (510) 280-2704
dspecter@prisonlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| MARCIANO PLATA, et al., | CASE NO. 01-1351 JST |
| Plaintiffs, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | |
| GAVIN NEWSOM, et al., | Date:   May 21, 2020 |
| Defendants. | Time:   10:00 a.m. |
| | Crtrm.: 6, 2nd Floor |
| | Judge:  Hon. Jon S. Tigar |

The parties submit the following joint statement in advance of the May 21, 2020 Case Management Conference.  The parties exchanged their respective sections at approximately 2:00 p.m. today.

## I. PLAINTIFFS' STATEMENT

As of just before 2:00 p.m. on Wednesday, May 20, 2020, 910 patients statewide had been confirmed to have COVID-19 via testing.[1]  These include 599 at the California Institution for Men (CIM), an increase of approximately 200 from a week ago and 500 from three weeks ago.  449 of CIM's cases are currently considered active at the prison.  There have also been 127 cases at California State Prison – Los Angeles County; 39 of those are considered active.[2]  226 cases statewide are considered resolved.

Since last week's Conference, new outbreaks have occurred at three prisons.  California Institution for Women (CIW) now has had 108 confirmed cases, an increase of almost 100 from a week ago.  That prison houses approximately 1,500, approximately 22% of whom (more than 300) are designated medical high risk; there are also eight who are pregnant.  Chuckawalla Valley State Prison (CVSP), an all-dorm institution which houses approximately 2,300 people, has 36 cases.  Avenal State Prison, which houses approximately 4,170 people (all but about 100 in dorms) has 25 cases.

There was an additional death of a COVID-19 patient this past week, bringing the total to six.  All deaths have been of patients from CIM who had serious medical conditions or other factors, such as age, that made them especially vulnerable to the disease.  Currently, 32 patients, including 27 from CIM, are at outside hospitals due to COVID-19 complications.  We anticipate an increase in community hospitalizations given the increasing number of COVID-19 confirmed cases statewide.

---

[1]  This number, and the others reported here, derive from the CDCR/CCHCS "Population COVID-19 Tracking" website, and include active in custody (638), released while active (10), resolved (226), and deceased (six) patients.

[2]  In addition, as reported previously, California Men's Colony has had 11 cases, Centinela State Prison has had two, and North Kern State Prison and the Substance Abuse Treatment Facility and State Prison at Corcoran have had one case each.

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Over the last approximately 10 days, the number of COVID-19 tests done statewide more than doubled, and now totals 7,192. More than 3,100 of that total have been done at CIM, where nearly the entire population has been tested. CCHCS last week indicated it was considering a similar mass testing at CIW. Plaintiffs believe such testing, as well as surveillance testing, is necessary to prevent or reduce the risk of widespread outbreaks and adequately protect the medically vulnerable. In this regard, Plaintiffs have been told that CCHCS has been promised 18,000 COVID-19 tests per month on an ongoing basis.

**A. Defendants and the Receiver denied Plaintiffs' request for a plan to house people at risk of severe illness or death from COVID-19.**

Plaintiffs requested several times that Defendants and the Receiver develop a plan to ensure that people who are medically vulnerable to complications and death from COVID-19 are safely housed during the pandemic. We made this request because COVID-19 is particularly dangerous for people who are elderly and those who are immunocompromised or have certain health conditions, and because many such people are currently housed in crowded congregate living areas in CDCR, where they are at heightened risk of contracting the virus. As stated above, six people, all with known medical conditions predisposing them to COVID complications, have died since April 16th of COVID-related causes. We believe most or all were living in dorms when they developed symptoms of the virus. In addition, of the 30 active COVID patients currently in an outside hospital, 26 have at least one identified risk factor and half have more than two identified risk factors based upon data in the CCHCS COVID registry.

After direction from this Court, Defendants responded to Plaintiffs' letter on May 15, denying the request for a plan. Defendants stated, and Plaintiffs agree, that CCHCS has identified people who have at least one risk factor for severe disease if they contract the virus. However, they refuse to perform a housing assessment for these people, stating that they and the Receiver believe medical staff already have mechanisms for assessing whether people are "housed in an environment that is conducive to the receipt of ongoing,

16561585.2

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

adequate treatment."  They claim that "a mass movement" of people to different housing "between institutions" is potentially dangerous.

These reasons are faulty.  First, Defendants state that they are considering moving some high risk patients out of CIM because of the COVID-19 outbreak at that facility.  Although that indefinite commitment comes late, it is welcome and should be expanded to other prisons, especially those such as CHCF and CMF which have scores of potentially vulnerable patients in congregate living areas.

Second, we understand that Defendants and CCHCS have procured a reliable monthly supply of 18,000 COVID-19 tests.  In Coleman proceedings, Defendants have described a transfer process in which people will be tested for the virus upon arrival at Reception Centers and again prior to transfer, and then will be housed in quarantine for 14 days upon arrival at their destination prison.  Presumably a similar process can be applied to the medically vulnerable requiring transfer to safer housing.

Defendants also assume that this would require mass movement of high risk patients.  However, all patients categorized as "high risk" are not necessarily at the same level of risk.  For example, patients with well-controlled diabetes are probably at less risk than other high risk patients.  An individualized assessment will allow Defendants to avoid a mass transfer by prioritizing patients whose conditions pose the greatest risk.  Moreover, because many prisons have both dormitories and celled housing, presumably some "rehousing" will involve moving people from a dorm to celled housing at the same prison, avoiding the need for a transfer to a different prison.

The CDCR tracking website shows that while the curve for California and the United States is flattening, the curve for confirmed cases in prison is rising at a much higher rate.  (https://www.cdcr.ca.gov/covid19/population-status-tracking/ at p. 4.) Therefore, in the near term there will probably be more outbreaks at other prisons.  Under these critical circumstances, additional precautions related to the housing of medically vulnerable patients should be taken immediately.  If adequate space is not available in the

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Executive is scheduled for Thursday, May 21, and Plaintiffs have provided questions and concerns in advance. In addition to matters related to the issues discussed above, we have asked to discuss the adequacy of hospital beds for COVID patients at CIW, CIM and CVSP, given that Riverside and San Bernardino Counties have high rates of COVID infection, and about measures to prevent virus transmission for those patients who require regular treatment at community hospitals or other off-site medical facilities.

## II. DEFENDANTS' STATEMENT

Defendants' statement addresses the questions this Court raised during the May 14 case management conference. In addition, Defendants' statement provides a summary of additional information and documents they have produced to Plaintiffs since the last conference.

Defendants also remain concerned with Plaintiffs' efforts in the *Coleman* litigation, which have the effect of muddying the waters dividing the *Plata* and *Coleman* matters. Most recently, on Monday, May 18, counsel in *Coleman*, Michael Bien, requested that the Special Master devote time on the task force meeting agenda to specifically consider "transfers of medically vulnerable" inmates. Mr. Specter and Mr. Fama were copied on this request and ultimately participated during the discussion of this agenda item during the *Coleman* task force meeting.

Mr. Bien's request was made following *Plata* Defendants' and CCHCS' joint response to *Plata* Plaintiffs' May 7 letter regarding the transfer of medically high-risk inmates. In their joint response, CDCR and CCHCS stated that:

(1) CCHCS has already identified inmates with at least one risk factor for severe illness if they contract the disease;

(2) CCHCS does not believe that additional analysis of risk on an individual basis is necessary because medical staff already have policies and procedures in place for assessing whether medically high-risk inmates are housed in an appropriate environment and if a high-risk patient living in "non-standard" housing (e.g., gyms or tents) cannot be treated

adequately for any reason, alternative placement for that patient may be appropriate; and

(3) CCHCS believes that mass movement of high-risk inmates between institutions without outbreaks is ill-advised and potentially dangerous since movement itself carries significant risk of spreading transmission of the disease between institutions. This initial response utilizes the well-accepted public health concepts of sheltering-in-place within the institution, quarantine and isolation. But the risks associated with transfer may be less than the risk of sheltering in place where the virus is present throughout housing units and high risk inmates test negative. CDCR will work with CCHCS to facilitate the safe transfer of high risk inmates if deemed appropriate by CCHCS and will consult with the Office of the Special Master if such transfers would impact *Coleman* class members.

## A. Response to the Court's question about releases

CDCR does not currently plan on conducting additional accelerated inmate releases. CDCR, however, has determined that it will postpone intake of inmates from the counties for an additional 30 days, with the exception of the intake of approximately 200 inmates over the next month. This limited intake of about 200 inmates will allow CDCR to test its new intake processes, including intake COVID-19 testing, and establish best practices of how to safely and efficiently expand intake. CDCR's decision to postpone intake for an additional 30 days will result in a further reduction of the prison population over the next month by approximately 1700 inmates. By way of reminder, intake was initially suspended by the Governor's March 24, 2020 Executive Order, and since that time, CDCR's adult population has decreased by approximately 5,317 inmates (as of May 13, 2020).

CDCR does not currently plan to conduct additional early inmate releases because it believes that it has taken and continues to take sufficient appropriate steps to improve the safety of inmates and staff in its prisons through social distancing, screening, enhanced cleaning and sanitation, staff and inmate education, and increased testing. CDCR will continue to monitor the evolving nature of this crisis and conditions in its institutions, and

16561585.2

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Correctional Training Facility, Chuckawalla Valley State Prison, North Kern State Prison, and Valley State Prison. On May 15, CDCR and CCHCS sent their joint response to PLO's May 7 letter about housing of medically vulnerable inmate-patients to Plaintiffs' counsel. On May 18, Defendants produced a map and photos of the medical triage tents that were set up at the California Institution for Men. On May 19, Defendants provided responses to PLO's follow-up questions about a document pertaining to the status of social distancing in CDCR's dorms as well as an updated status summary. The same day, Defendants also produced a poster that lists the updated screening criteria for staff who enter CDCR's institutions, and CDCR and CCHCS provided answers to Plaintiffs' questions about the processes for critical inmate workers at the California State Prison – Los Angeles County via the non-paragraph 7 process. Lastly, Defendants intend to respond in writing on May 20 to Plaintiffs' counsel's May 18 letter in which Plaintiffs provide their suggestions regarding intake.

Regarding Plaintiffs' request for a virtual tour at the California Institution for Men, the parties met and conferred on the topic on May 15 and discussed which areas Plaintiffs' counsel would like to tour. A test run is planned at CIM on May 20 to determine whether the tour can be facilitated from a technical perspective. Subject to confirmation from Plaintiffs' counsel and to the parties' agreement on the agenda of the tour, the virtual tour is likely to occur on Friday, May 22.

DATED: May 20, 2020                    PRISON LAW OFFICE


                                       By:    /s/ Steven Fama
                                              STEVEN FAMA
                                              Attorney for Plaintiffs

16561585.2
JOINT CASE MANAGEMENT CONFERENCE STATEMENT

DATED:  May 20, 2020

XAVIER BECERRA
Attorney General of California


By: _____/s/ Damon McClain_____
DAMON MCCLAIN
Supervising Deputy Attorney General
NASSTARAN RUHPARWAR
Deputy Attorney General
Attorneys for Defendants


DATED:  May 20, 2020

HANSON BRIDGETT LLP


By: _____/s/ Samantha Wolff_____
PAUL B. MELLO
SAMANTHA D. WOLFF
Attorneys for Defendants

16561585.2

JOINT CASE MANAGEMENT CONFERENCE STATEMENT