EXHIBIT H

PAGES 1 - 47

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JON S. TIGAR, JUDGE**

```
MARCIANO PLATA, ET AL.,    )
                           )
        PLAINTIFFS,        )   NO. C-01-1351 JST
                           )
  VS.                      )   THURSDAY, MAY 21, 2020
                           )
GAVIN NEWSOME, ET AL.,     )   OAKLAND, CALIFORNIA
                           )
                           )   FURTHER CASE MANAGEMENT
                           )        CONFERENCE
        DEFENDANTS.        )
_____)
```

**REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**	PRISON LAW OFFICE
	1917 FIFTH STREET
	BERKELEY, CALIFORNIA 94710
	BY:	DONALD H. SPECTER, ESQUIRE
		STEVEN FAMA, ESQUIRE
		ALISON HARDY, ESQUIRE


**FOR DEFENDANTS:**	HANSON, BRIDGETT LLP
	425 MARKET STREET, 26TH FLOOR
	SAN FRANCISCO, CALIFORNIA 94105
	BY:	PAUL B. MELLO, ESQUIRE
		SAMANTHA WOLFF, ESQUIRE


(APPEARANCES CONTINUED)

**REPORTED BY:**	DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
	OFFICIAL COURT REPORTER


TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

```
 1   FOR DEFENDANTS:           DEPARTMENT OF JUSTICE
                               OFFICE OF THE ATTORNEY GENERAL
 2                             455 GOLDEN GATE AVENUE, STE. 11000
                               SAN FRANCISCO, CALIFORNIA 94102
 3                       BY:   DAMON G. MCCLAIN, DEPUTY A.G.

 4


 5   FOR INTERVENOR            MESSING ADAM & JASMINE, LLP
     CCPOA:                    235 MONTGOMERY STREET, STE. 828
 6                             SAN FRANCISCO, CALIFORNIA 94104
     (LISTENING)         BY:   GREGG M. ADAM, ESQUIRE
 7


 8                             CALIFORNIA CORRECTIONAL PEACE
                               OFFICERS ASSOCIATION
 9                             755 RIVERPOINT DRIVE STE. 200
                               SACRAMENTO, CALIFORNIA 95605
10   (LISTENING)         BY:   DAVID A. SANDERS, ESQUIRE

11


12   FOR RECEIVER              FUTTERMAN DUPREE DODD CROLEY MAIER
     CLARK KELSO:              601 MONTGOMERY STREET, STE. 333
13                             SAN FRANCISCO, CALIFORNIA 94111
                         BY:   MARTIN H. DODD, ESQUIRE
14

15


16   ALSO PRESENT:             CLARK KELSO, RECEIVER

17

18

19

20

21

22

23

24

25
```

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

| | |
|---|---|
| 1 | <u>THURSDAY, MAY 21, 2020</u>                                              <u>10:00 A.M.</u> |
| 2 | P R O C E E D I N G S |
| 3 | O0O |
| 4 | **THE COURT:** GOOD MORNING, EVERYONE.  THIS IS JUDGE |
| 5 | TIGAR. |
| 6 | AS YOU CAN SEE, MY PICTURE IS NOT MOVING AT ALL.  THEY |
| 7 | HAVE SOME TECHNOLOGICAL LIMITATIONS TODAY, SO I'LL BE |
| 8 | PARTICIPATING -- OR I'LL BE PRESIDING, RATHER, OVER THE CASE |
| 9 | MANAGEMENT CONFERENCE BY USING AUDIO. |
| 10 | I CAN SEE ALL OF YOU.  I'M USING THE SAME ZOOM PROGRAM |
| 11 | THAT YOU ARE, SO I AM ABLE TO SEE YOU.  AND I JUST APOLOGIZE |
| 12 | THAT HOPEFULLY ONLY TODAY I'M NOT ABLE TO BE ADVISABLE TO YOU. |
| 13 | MS. LEE, WOULD YOU GO AHEAD AND CALL THE CASE, PLEASE? |
| 14 | **THE CLERK:**  YES, SIR. |
| 15 | YOUR HONOR, NOW CALLING CIVIL MATTER 01-1351 MARCIANO |
| 16 | PLATA, ET AL. V. GAVIN NEWSOM, ET AL. |
| 17 | IF COUNSEL COULD PLEASE IDENTIFY THEMSELVES FOR THE RECORD |
| 18 | STARTING WITH PLAINTIFFS. |
| 19 | **MR. SPECTER:**  THANK YOU.  THIS IS DONALD SPECTER FROM |
| 20 | THE PRISON LAW OFFICE FOR PLAINTIFF. |
| 21 | (PAUSE IN THE PROCEEDINGS.) |
| 22 | **THE COURT:**  MS. HARDY, YOU DON'T SHOW AS MUTED ON |
| 23 | YOUR SCREEN, BUT YOU'RE NOT AUDIBLE. |
| 24 | **MS. HARDY:**  I WAS WATCHING STEVE FAMA SPEAK AND HE |
| 25 | WAS MUTED.  THIS IS ALISON HARDY, AND I AM APPEARING FOR THE |

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

```
 1    PLAINTIFFS TODAY.
 2         MR. FAMA:  I APOLOGIZE FOR NOT BEING AUDIBLE FOR A
 3    FEW SECONDS THERE.
 4       THIS IS STEVEN FAMA ALSO FOR THE PLAINTIFFS.
 5         MR. MELLO:  GOOD MORNING, YOUR HONOR, PAUL MELLO,
 6    HANSON, BRIDGETT ON BEHALF OF DEFENDANTS.
 7         MS. WOLFF:  GOOD MORNING, YOUR HONOR.  SAMANTHA WOLFF
 8    FROM HANSON, BRIDGETT ON BEHALF OF DEFENDANTS.
 9         MS. MCCLAIN:  GOOD MORNING, YOUR HONOR, DAMON MCCLAIN
10    FOR THE DEFENDANTS.
11         THE COURT:  OKAY.  VERY GOOD.
12         MR. DODD:  GOOD MORNING, YOUR HONOR.  MARTIN DODD FOR
13    THE RECEIVER.
14         MR. KELSO:  GOOD MORNING, YOUR HONOR.  CLARK KELSO,
15    THE RECEIVER.
16         THE COURT:  ALL RIGHT.  AND THE RECORD WILL REFLECT
17    THAT MR. SANDERS AND MR. ADAM ARE ALSO HERE LISTENING IN TO
18    THE PROCEEDINGS ON BEHALF OF THE CCPOA.
19       WHY DON'T WE GET GOING.  I AM GOING TO PROCEED AS I HAVE
20    THE LAST COUPLE OF WEEKS, AND THAT IS, I'M GOING TO LEAD OFF
21    THE DISCUSSION ON THE TOPICS THAT WERE OF INTEREST TO ME FROM
22    THE PARTIES' CASE MANAGEMENT STATEMENT.  AND THEN AFTER I'VE
23    SAID WHAT I HAVE TO SAY OR ASK THE QUESTIONS THAT I NEED TO
24    ASK, I'LL INVITE THE PARTIES TO CONTRIBUTE FURTHER ON THAT
25    PARTICULAR TOPIC.
```

         LET ME START WITH SOMETHING THAT I THINK IS A REAL
POSITIVE, AND THAT IS TESTING.  I APPRECIATE THE EFFORTS THAT
THE DEFENDANTS MADE TO ANSWER THE COURT'S QUESTIONS REGARDING
TESTING.  I UNDERSTAND THAT CERTAIN INFORMATION SIMPLY WAS NOT
AVAILABLE TO THEM.  I THINK THAT FOR NOW I HAVE ENOUGH
INFORMATION ABOUT THAT TOPIC, AND I'M GLAD THAT THE STATE'S
EFFORTS TO PROVIDE THE RECEIVER WITH THE TESTS HE NEEDS HAVE
PAID OFF.

         I SEE THAT THE PLAINTIFFS NOTE THAT THERE IS NOW A DELTA
BETWEEN THE TESTS THAT THE RECEIVER HAS ACCESS TO AND THE
TESTS THAT THE RECEIVER WILL NEED GIVEN THE INTAKE LEVELS THAT
ARE FORECAST AND SO FORTH.  I'M GOING TO ALLOW THE RECEIVER TO
THINK ABOUT WHAT HE WANTS TO DO WITH THOSE TESTS.  I DON'T
ANTICIPATE MAKING ANY ORDERS TODAY, AND THAT'S REALLY ALL I
HAVE TO SAY ON THE SUBJECT OF TESTING.

         MR. SPECTER, DO YOU WANT TO ADD ANYTHING?

         **MR. SPECTER:**  WELL, I WAS THINKING, ACTUALLY, NOW
THAT THEY HAVE MORE TESTS AVAILABLE FOR A SMALLER POPULATION
THAT THEY -- THAN THEY ANTICIPATED, WHETHER MR. KELSO WAS
CONSIDERING USING SOME OF THOSE TESTS TO TEST THE STAFF.

         AND THE REASON THAT IS, BECAUSE AS YOU PROBABLY HAVE SEEN
THROUGH OUR CASE MANAGEMENT STATEMENT AND THE COVID TRACKER,
THE VIRUS IS SPREADING AMONG INSTITUTIONS WHILE THE PRISONER
POPULATION HAS BEEN LOCKED DOWN.  SO IT SEEMS THAT THE VECTOR
OF -- FUSION OF -- OR TRANSMISSION OF THE VIRUS IS RELATED TO

```
 1    THE EMPLOYEES WHO COME IN AND OUT OF THE PRISON.
 2         SO I WAS WONDERING WHAT MR. KELSO'S VIEWS ON THAT WERE.
 3            THE COURT:  WELL, THAT'S A GOOD QUESTION.  BEFORE I
 4    TURN TO MR. KELSO OR ASK HIM TO RESPOND TO THAT, IS THERE
 5    ANYTHING, MR. MELLO OR MS. WOLFF, THAT THE DEFENDANTS WANT TO
 6    SAY ON THIS SUBJECT?
 7            MR. MELLO:  NO.  I THINK YOUR HONOR'S STATEMENTS THAT
 8    THE RECEIVER SHOULD BE ALLOWED TO THINK ABOUT THAT AND CONSULT
 9    WITH US ON THAT MAKES SENSE TO US, YOUR HONOR.
10            THE COURT:  MR. KELSO, WOULD IT BE APPROPRIATE FOR ME
11    JUST TO ASK YOU TO RESPOND NEXT WEEK, GIVE THE PARTIES AN
12    OPPORTUNITY TO MAKE WHATEVER PROPOSALS THEY WANT TO YOU FOR
13    YOU TO CONSULT WITH YOUR STAFF AND -- I'M GOING TO COME BACK
14    TO THE SUBJECT OF PUBLIC HEALTH EXPERTISE IN JUST A MOMENT.
15         WOULD IT BE APPROPRIATE FOR ME TO ASK YOU TO RESPOND TO
16    THE PARTIES AND THEN WE CAN TAKE THAT UP NEXT WEEK?
17            MR. KELSO:  YES, YOUR HONOR.
18         THE -- WE AGREE THAT AT THIS POINT THE MOST SIGNIFICANT
19    RISK OF EXPOSURE COMES FROM STAFF.  A COUPLE OF THOUSAND TESTS
20    CERTAINLY DOESN'T GIVE US THE ABILITY TO TEST STAFF EVERYWHERE
21    WE WOULD NEED TO.  BUT IT MAY GIVE US THE OPPORTUNITY TO TEST
22    STAFF AT SPECIFIED HIGH-RISK INSTITUTIONS, FOR EXAMPLE, OR AT
23    THE BEGINNING OF WHAT MAY BE AN OUTBREAK.
24         AND MY STAFF IS ALREADY THINKING ABOUT ALONG THOSE LINES
25    AS WELL AS WHETHER WE CAN TAKE -- AND IT MAY BE RELATED TO
```

|   |   |
|---|---|
| 1 | THIS -- WHETHER WE CAN TAKE SOME ADDITIONAL STEPS TO PROTECT |
| 2 | PATIENTS AT INSTITUTIONS WHERE OUTBREAKS MAY BE BEGINNING WHEN |
| 3 | IT COMES TO -- OR DORMS, MORE PRECISELY, WHEN IT COMES TO |
| 4 | EMPLOYEE COHORTING.  THAT'S AN AWFUL TERM FOR WHAT I'M TRYING |
| 5 | TO DESCRIBE HERE.  I THINK -- |
| 6 | (SIMULTANEOUS COLLOQUY) |
| 7 | **THE COURT:**  I APPRECIATE YOUR -- |
| 8 | **MR. KELSO:**  -- IN THE CASES. |
| 9 | **THE COURT:**  WHAT YOU ARE REFERRING TO IS THE IDEA |
| 10 | THAT THERE SHOULD BE -- WHEN YOU SAY "EMPLOYEE COHORTING," |
| 11 | THAT AN INDIVIDUAL STAFF MEMBER SHOULD INTERACT WITH AS FEW |
| 12 | INMATES AS POSSIBLE OR -- MAYBE THAT'S NOT THE BEST WAY OF |
| 13 | SAYING THAT, BUT THAT INMATES -- ACTUALLY, PROBABLY THE BETTER |
| 14 | WAY IS, EACH INMATE SHOULD INTERACT WITH THE SAME STAFF |
| 15 | MEMBERS AT A GIVEN ROLE OR POSITION TO THE GREATEST EXTENT |
| 16 | POSSIBLE. |
| 17 | THAT'S WHAT YOU MEAN? |
| 18 | **MR. KELSO:**  YES, YOUR HONOR.  YOU HAVE STATED IT |
| 19 | BETTER THAN I DID. |
| 20 | **THE COURT:**  OKAY. |
| 21 | **MR. KELSO:**  AND WE ARE STARTING TO THINK ABOUT THAT. |
| 22 | **THE COURT:**  THESE TESTS -- IT MAY BE THAT |
| 23 | MR. SPECTER'S SUGGESTION IS A GOOD ONE AND IT'S THE RIGHT ONE, |
| 24 | AND IT SOUNDS LIKE MR. KELSO IS ALREADY THINKING ABOUT THAT. |
| 25 | I WILL COME BACK TO THIS TOPIC IN JUST A SECOND. |

1  ONE LIMITATION THAT I THINK WE HAVE BEEN EXPERIENCING IN
2  THESE CASE MANAGEMENT CONFERENCES IS -- AND I DON'T KNOW
3  EVERYBODY'S C.V. HERE, BUT I'M GOING TO HAZARD A GUESS THAT
4  NONE OF US HAS A MEDICAL DEGREE AND NONE OF US HAS A DEGREE IN
5  PUBLIC HEALTH.  SO WE HAVE PEOPLE TAKING POSITIONS, INCLUDING
6  THE COURT, IN THESE CASE MANAGEMENT CONFERENCES WHERE WE SAY
7  WE SHOULD DO "X" AND SOMEONE SAYS WE SHOULD DO "X" FOR THE
8  PURPOSE OF PROMOTING PUBLIC HEALTH WITHIN THE PRISONS.  AND
9  NOBODY HERE HAS ANY EXPERTISE IN THAT AREA.
10      SO, THAT'S SOMETHING I WANT US TO THINK ABOUT.  I THINK IT
11 IS RELATED TO THIS QUESTION OF HOW TO USE THE TESTS.  I DON'T
12 WANT THE PARTIES TO BE TALKING PASSED EACH OTHER.  I THINK
13 EVERYBODY NEEDS TO BE CLEAR WITH EVERYBODY ELSE ABOUT THE
14 BASIS FOR A PARTICULAR SUGGESTION BECAUSE THESE TESTS -- NOW
15 WE HAVE MORE OF THEM THAN WE USED TO -- THEY REMAIN SCARCE.
16 THERE IS A VERY HIGH OPPORTUNITY COST FOR EACH TEST.  BY THAT
17 I MEAN, IF YOU USE THE TEST FOR A GIVEN PURPOSE, IT IS NO
18 LONGER AVAILABLE FOR ANY OTHER PURPOSE.
19      SO IT'S NOT A DECISION THAT YOU WOULD WANT TO MAKE
20 CASUALLY BECAUSE ONCE IT IS NOT AVAILABLE FOR ANOTHER PURPOSE,
21 IF THAT OTHER PURPOSE WOULD HAVE DONE A BETTER JOB OF
22 IDENTIFYING WHERE THE RISK OF TRANSMISSION OF COVID IS, YOU'VE
23 GIVEN UP AN IMPORTANT OPPORTUNITY.
24      SO, ANYWAY, I THINK FOR THAT REASON, AND THE OTHER REASONS
25 WE'VE DISCUSSED, IT MAKES SENSE FOR THE PARTIES TO MAKE THEIR

```
 1    SUGGESTIONS TO MR. KELSO, FOR MR. KELSO TO GET BACK TO THE
 2    PARTIES, AND FOR BOTH OF THOSE STEPS TO HAVE OCCURRED BEFORE
 3    NEXT WEEK'S CASE MANAGEMENT CONFERENCE.
 4         IF THE PARTIES ARE ABLE TO COME TO SOME KIND OF COMMON
 5    UNDERSTANDING, THAT'S GREAT.  IF THEY ARE NOT, THEN WE CAN
 6    FIGURE OUT WHAT TO DO ABOUT IT NEXT WEEK.
 7         LET'S TALK ABOUT HIGH-RISK INMATES.  AND I THINK WE'VE
 8    ESTABLISHED IN A PRIOR CASE MANAGEMENT CONFERENCE THAT WE'RE
 9    TALKING ORDER OF MAGNITUDE ABOUT ROUGHLY 50,000 INMATES.  AND
10    THAT JUST MEANS THAT THESE ARE INMATES WHO HAVE ONE OR MORE
11    FACTORS THAT ARE ASSOCIATED WITH ADDITIONAL RISK FOR GETTING
12    COVID OR IF YOU GET COVID, FOR HAVING A BAD RESULT.
13         THAT'S OBVIOUSLY A HUGE NUMBER.  AS THE PLAINTIFFS
14    ACKNOWLEDGE IN THEIR CASE MANAGEMENT STATEMENT, THERE ARE
15    DEGREES OF RISK.  SO SOME PEOPLE ARE AT HIGHER RISK THAN
16    OTHERS.  I'M AWARE OF THE GIANT LIST OF INMATES WHO HAVE ONE
17    OR MORE FACTORS.  I'M NOT AWARE THAT ANYBODY HAS TAKEN OR MADE
18    THE EFFORT, IF IT CAN BE DONE, TO CREATE GRADATIONS OF RISK
19    WITHIN THAT LIST.  IF THAT HAS HAPPENED, I AM NOT AWARE OF IT.
20         I JUST WANT TO SAY THAT BEFORE THE COURT STARTS
21    ENTERTAINING PROPOSALS OR MAKING ORDERS ON THIS ISSUE, I THINK
22    THE CONVERSATION REALLY SUFFERS FROM THE LIMITATIONS I WAS
23    IDENTIFYING A MOMENT AGO.  SO THE FIRST THING THAT NEEDS TO
24    HAPPEN IS, I NEED CLEAR GUIDELINES AND PROCEDURES FROM THE
25    STATE.
```

```
 1          THE SECOND THING IS, I NEED TO KNOW WHAT IS ADVISABLE FROM
 2     A PUBLIC HEALTH STANDPOINT.
 3          AND THE THIRD THING IS, I NEED TO KNOW WHAT'S FEASIBLE.
 4     BECAUSE SOMETHING MIGHT BE THE BEST THING FROM A PUBLIC
 5     STANDPOINT, BUT IT MIGHT NOT BE POSSIBLE FOR US RIGHT NOW TO
 6     CARRY IT OUT.  BUT WE NEED TO KNOW WHAT THE BEST THING IS,
 7     EVEN IF WE CAN'T CARRY IT OUT BECAUSE WE NEED TO KNOW HOW
 8     CLOSE WE CAN GET.
 9          I WANT TO UNPACK THAT FOR A SECOND.  THE FIRST THING I
10     SAID WAS, A WRITTEN PLAN AND A SET OF GUIDELINES AND
11     PROCEDURES.
12          SO WHAT EXACTLY ARE THE PROCEDURES AND THE GUIDELINES THAT
13     THE STATE FOLLOWS WITH REGARD TO HIGH-RISK INMATES?  HOW DO
14     YOU DETERMINE WHERE THEY ARE HOUSED?  WHAT DO YOU DO IF THERE
15     IS AN OUTBREAK?
16          I DON'T KNOW IF "OUTBREAK" HAS A SPECIAL MEANING TO THIS
17     GROUP.  MAYBE THAT SUGGESTS A LARGER NUMBER OF INFECTIONS.
18          BUT WHAT DO YOU DO IF THERE IS AN INFECTION WITHIN THEIR
19     HOUSING UNIT?  WHAT DO YOU DO IF THERE ARE SEVERAL INFECTIONS
20     WITHIN THEIR HOUSING UNIT?  UNDER WHAT CIRCUMSTANCES DO YOU
21     CONSIDER TRANSFER?  IF YOU CONSIDER TRANSFER, WHERE ARE THE
22     PLACES TO WHICH THAT INMATE MIGHT BE TRANSFERRED?
23          I'M NOT EVEN SAYING THESE ARE THE RIGHT QUESTIONS.  I'M
24     JUST SAYING THAT I DON'T KNOW HOW WE CAN PROCEED TO HAVE A
25     CONVERSATION UNLESS WE HAVE A WRITTEN SET OF GUIDELINES AND
```

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

```
 1    PROCEDURES TO ADDRESS THESE ISSUES.
 2         NOW, I KNOW THAT THERE HAS ALREADY BEEN SOME BACK AND
 3    FORTH BETWEEN THE PARTIES ABOUT THIS.  AND ON MAY 18TH, THE
 4    STATE FILED A DOCUMENT THAT CONTAINS SOME RESPONSES TO
 5    QUESTIONS THAT THE PLAINTIFF -- PLAINTIFFS HAVE ASKED.  THAT
 6    DOCUMENT IDENTIFIES THAT MEDICAL STAFF ALREADY HAVE POLICIES
 7    AND PROCEDURES IN PLACE FOR ASSESSING WHETHER MEDICALLY
 8    HIGH-RISK INMATES ARE HOUSED IN AN ENVIRONMENT THAT IS
 9    CONDUCIVE TO THE RECEIPT OF ONGOING ADEQUATE TREATMENT.
10         IT SAYS THAT IF MEDICAL STAFF DETERMINE THAT ANY HIGH-RISK
11    PATIENT WHO HAS BEEN MOVED INTO NONSTANDARD HOUSING, E.G. GYMS
12    OR TENTS, CANNOT BE TREATED ADEQUATELY IN THEIR CURRENT
13    PLACEMENT, THEN ALTERNATIVE PLACEMENT FOR THAT PATIENT MAY BE
14    APPROPRIATE.
15         THE RESPONSE RULES OUT LARGE MOVEMENT OF INMATES BETWEEN
16    INSTITUTIONS FOR PUBLIC HEALTH REASONS, BUT IT DOESN'T SAY
17    ANYTHING ABOUT SMALLER MOVEMENTS AND IT DOESN'T ADDRESS THE
18    QUESTION OF MOVEMENTS WITHIN THE INSTITUTION.
19         SO I SEE THAT DOCUMENT AS BEING AN EXAMPLE OF THE KIND OF
20    THING I'M TALKING ABOUT.  I DON'T THINK IT COVERS THE
21    WATERFRONT.  ALSO THAT DOCUMENT WAS WRITTEN BY LAWYERS, WHICH
22    IS FINE, THIS IS LITIGATION; IT WAS WRITTEN BY LAWYERS TO SEND
23    TO SOME OTHER LAWYERS.  THE DOCUMENT ITSELF IS NOT THE
24    UNDERLYING POLICIES AND PROCEDURES.  IT'S A DESCRIPTION OF --
25    IT'S A SECOND ORDER DESCRIPTION OF SOMETHING ELSE.
```

```
1        SO WHY AM I GOING ON ABOUT THIS?  BECAUSE WE CAN'T KNOW
2   WHETHER -- WE HAVE TO HAVE POLICIES AND PROCEDURES TO
3   ESTABLISH THE TERMS OF THE DEBATE IN PART SO WE CAN KNOW IF
4   THE PROCEDURES ARE BEING FOLLOWED, BUT ALSO SO WE CAN KNOW IF
5   THE PROCEDURES THEMSELVES ARE THE CORRECT PROCEDURES.
6        SO THAT'S JUST THE FIRST THING.  THAT IS, HAVING CLEAR
7   GUIDELINES AND PROCEDURES, NOT JUST ON THIS ISSUE OF HIGH-RISK
8   INMATES, WHICH IS ONE OF THE MOST VISIBLE ISSUES IN THE CASE
9   MANAGEMENT STATEMENT, BUT ON ANY ISSUES LIKE THIS AS THEY GO
10  ALONG BECAUSE WE ARE GOING TO BE MANAGING THIS CASE TOGETHER
11  FOR SOME TIME.  THIS IS NOT GOING TO GO AWAY.  SO THIS HAS TO
12  BE A MODE OF THINKING ABOUT HOW TO SOLVE OUR PROBLEMS.
13       SECONDLY, I SAID, I NEED TO KNOW WHAT IS ADVISABLE FROM A
14  PUBLIC HEALTH STANDPOINT.  THIS IS CRUCIAL.  THIS IS CRUCIAL.
15  I HAVE THE PARTIES EVERY WEEK TELLING ME -- I HAVE THE
16  PLAINTIFFS TELLING ME, THE STATE SHOULD BE DOING "X."  I HAVE
17  THE DEFENDANTS SAYING, AND THEY ACTUALLY USE THIS WORD, AND I
18  PROMISE YOU WE WILL COME BACK TO THIS, WHAT WE ARE DOING IS
19  "SUFFICIENT."  SUFFICIENT.  SAYS WHO?  US WITH OUR LAW
20  DEGREES?
21       SO AT THIS POINT I AM NOT -- I AM NOT CURRENTLY ENGAGED IN
22  THE PROCESS OF HIRING A COURT EXPERT; I MAY AT SOME POINT DO
23  THAT.  THIS WOULD NOT BE SOMEBODY WHO WORKS FOR MR. KELSO.
24  THIS WOULD BE SOMEBODY WHO ONLY WORKED FOR ME.
25       IF I DO THAT, I WILL BE ASKING YOU TO WAIVE CERTAIN OF THE
```

```
 1    BENEFITS TO YOU OF RULE 706.  I WOULD ONLY DO IT, FOR EXAMPLE,
 2    IF I COULD TALK EX PARTE TO THE PERSON WITHOUT POURING OVER
 3    THOSE CONVERSATIONS SO THAT I CAN GET CANDID ADVICE THAT WOULD
 4    BE FREE FROM WHAT HAPPENS WHEN THINGS ARE INTRODUCED IN
 5    LITIGATION.
 6         BUT I'M NOT THERE YET.  I'M NOT THERE BECAUSE WHAT I WANT
 7    TO SAY IS, I THINK THAT YOU, THE PARTIES, SHOULD CONSIDER
 8    HIRING PUBLIC HEALTH EXPERTS SO THAT YOU COULD BE PERSUASIVE
 9    TO ME.
10         I DO THAT WITH SOME RELUCTANCE.  I DO IT WITH RELUCTANCE
11    BECAUSE IT'S A LITIGATION STEP, AND I FEEL WE HAVE BEEN MAKING
12    MORE PROGRESS IN THESE CONFERENCES WHEN WE MOVE AWAY FROM A
13    LITIGATION MODEL.  BUT I FIND IT DIFFICULT TO EVALUATE THE
14    PARTIES' PROPOSALS AND THEIR RESPONSES TO EACH OTHER'S
15    PROPOSALS WITHOUT KNOWING WHAT THOSE PROPOSALS ARE GROUNDED
16    IN; WHETHER I WOULD BE MAKING A MISTAKE BY ADOPTING OR NOT
17    ADOPTING A PARTICULAR PROPOSAL.
18         SO, IF YOU GO DOWN THAT PATH AND, FRANKLY, I HOPE YOU
19    WILL, AND THAT IS TO HIRE REPUTABLE PRISON PUBLIC HEALTH
20    EXPERTS, THAT THESE WOULD BE PERSONS WHO COULD PROVIDE
21    GUIDANCE NOT JUST TO YOU BUT ALSO TO ME, AND ALSO TO EACH
22    OTHER.  AND I WOULD HOPE THOSE EXPERTS WOULD TALK DIRECTLY TO
23    EACH OTHER.
24         SO, FOR EXAMPLE, I'M GOING TO START JUMPING BACK AND FORTH
25    BECAUSE I SAID THERE ARE THREE THINGS, AND WE'RE GOING ON AT
```

```
1    LENGTH ABOUT THE SECOND ONE.  LET'S KEEP ON WITH THIS SECOND
2    PART, WHICH IS DETERMINING WHAT'S ADVISABLE FROM A -- OR BEST
3    PRACTICE FROM A PUBLIC HEALTH STANDPOINT.
4         SO LET'S JUST TALK ABOUT A COUPLE OF EXAMPLES.  PUTTING
5    TRANSFER OF HIGH-RISK INMATES TO ONE SIDE, ARE THERE OTHER
6    STEPS THE FACILITY SHOULD BE TAKING TO PROTECT HIGH-RISK
7    INMATES?  ARE THERE?  I DON'T KNOW.
8         I HAVE A TREMENDOUS AMOUNT OF CONFIDENCE IN MR. KELSO AND
9    HIS TEAM; I CONTINUE TO HAVE THAT.  THESE COMMENTS ARE NOT IN
10   ANY WAY IN TENSION WITH WHAT I JUST SAID.  BUT AS I SAID LAST
11   WEEK, WE ALL HAVE TO BE COMMITTED TO DOING EVERYTHING WE CAN.
12        SO, I THINK IT WILL HAVE A MUCH MORE -- IT WILL PROVIDE
13   MUCH MORE CREDIBILITY, WEIGHT WHEN THE PARTIES SAY, HAVE YOU
14   THOUGHT ABOUT THIS?  COULD YOU ORDER MR. KELSO TO DO THAT?
15   WHY DON'T YOU ASK THE STATE ABOUT THIS IF I KNOW THAT THOSE
16   SUGGESTIONS ARE COMING FROM A PLACE OF PUBLIC HEALTH
17   EXPERTISE?
18        ALSO, IF THE PARTIES BOTH HIRE EXPERTS, THOSE EXPERTS
19   COULD BE TALKING TO EACH OTHER AND HOPEFULLY YOU COULD BE
20   MAKING PROGRESS OFFLINE.  BECAUSE ANY TIME BOTH OF THE EXPERTS
21   AGREE ON SOMETHING, SUBJECT TO FEASIBILITY, WHICH WE WILL GET
22   TO IN JUST A SECOND, THEN THAT GIVES MR. KELSO ADDITIONAL
23   COMFORT IN TWO FORMS.  FIRST, ADDITIONAL COMFORT THAT THIS
24   ADDITIONAL PUBLIC HEALTH EXPERTISE SUGGESTS THAT THERE'S A
25   GOOD WAY FORWARD AND, SECONDLY, HE KNOWS IT'S NOT GOING TO BE
```

1          **MR. MELLO:** THAT WORKS, YOUR HONOR.

2          **THE COURT:** OKAY. VERY GOOD. WE WILL SET OUR NEXT

3 CASE MANAGEMENT CONFERENCE ON THURSDAY, MAY 28TH AT 10:00 A.M.

4     WAS THE STATEMENT DUE AT 4:00 O'CLOCK YESTERDAY?

5          **MR. SPECTER:** YES, YOUR HONOR.

6          **THE COURT:** STATEMENT WILL BE DUE AT 4:00 O'CLOCK

7 WEDNESDAY, MAY 27.

8     I THANK THE PARTIES. THAT ENDS THIS CONFERENCE.

9          (PROCEEDINGS CONCLUDED AT 11:10 A.M.)

10

11                **CERTIFICATE OF REPORTER**

12     I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

13 UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

14 CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

15 RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

16

17          _Diane E. Skillman_

18       DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

19          WEDNESDAY, MAY 27, 2020