s

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| IN RE CIM-SQ TRANSFER CASES | Case No. 5:20-cv-06326-EJD |
|---|---|
| This Document Relates To:<br><br>24-cv-00013; *Stanley v. CDCR* | **ORDER OF SERVICE; DENYING MOTION TO SEVER; DENYING MOTION FOR APPOINTMENT OF COUNSEL**<br><br>Dkt. Nos. 59, 100 |

**INTRODUCTION**

Plaintiff, a California prisoner, filed a pro se civil rights action in state court. Plaintiff alleged that defendants violated his rights under the Eighth Amendment and state law by transferring over 100 inmates, some of whom were infected with COVID-19, from the California Institution for Men (CIM) to San Quentin State Prison (SQSP)[1] in May 2020. Dkt. No. 1 at 13. Defendants removed this action from state court and paid the filing fee. Dkt. No. 1 at 1, Dkt. No. 7. The case is now before the Court for screening pursuant to 28 U.S.C. § 1915A(a), and service of the complaint on defendants is ordered.

This case has been consolidated with cases in this district related to the 2020 prisoner transfer and related to the first case filed, No. 5:20-cv-06326-EJD, which now has the caption "In Re CIM-SQ Transfer Cases." Pro se prisoner cases that are part of the consolidated matter are stayed except for the purposes of service. Service shall therefore proceed in Mr. Stanley's case as ordered below, but the case will remain stayed for all other purposes. The docket for Case No. 24-

---

[1] SQSP is now called the San Quentin Rehabilitation Center. The former name is used in this Order for clarity.

cv-00013 and all other individual dockets have been closed. If Mr. Stanely wishes to file any motions, he must file them in Case No. 5:20-cv-06326-EJD and include his original case number, No. 24-cv-00013, on the left side of the heading.

Plaintiff Mark Stanley seeks to sever his case from the consolidated In re CIM-SQ Transfer Cases because "unlike other plaintiff's exposure, this Plaintiff was forced by CDCR Staff ordering Plaintiff, to not only handle the "highly" contagious property of infected inmates" but also "assist[] the 'highly' contagious inmates physically by coming in contact with them when they needed to rest upon him in their movement to Badger Unit." Dkt. No. 59 in Case No. 20-cv-06326-EJD at 2. Plaintiff's complaint did not name as defendants specific San Quentin staff members who forced him to handle property or to come into contact with transferring prisoners. He named the same defendants as other plaintiffs, top prison administrators, alleging they were responsible for recklessly exposing him to COVID as an ADA worker who came into contact with prisoners whom defendants transferred from CIM without adequate protocols in place to prevent disease spread. Dkt. No. 1 at 11, 14. Plaintiff's claims against defendants are substantially similar to claims in other cases in the consolidated matter, and plaintiff will benefit from accessing discovery in these cases as well as the opportunity to participate in a class action, should the class action move forward.

The motion to sever is therefore DENIED at this time.

## STANDARD OF REVIEW

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the

statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). Although to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

## LEGAL CLAIMS

Plaintiff names the following defendants:

1. The State of California
2. CDCR
3. California Correctional Health Care Services
4. CDCR Secretary Ralph Diaz
5. CDCR Medical Director R. Steven Tharratt
6. San Quentin Warden Ron Davis
7. San Quentin Healthcare Chief Executive/ Medical Director Clarence Cryer
8. San Quentin Chief Medical Executive Dr. Alison Pachynski

3

      9. San Quentin Chief Physician and Surgeon, Dr. Shannon Garrigan

      10. Kathleen Allison, Acting Director of CDCR

      11. Ronald Broomfield, Acting Warden of SQSP

      12. J. Arnold, Captain at SQSP

      13. Dean Borders, CIM Warden

      14. Dr. Joseph Bink, CCHCS Director

Dkt. No. 1 at 11, 22. These individuals comprise some of the directors, executives, employees, and agents, including but not limited to San Quentin and CIM personnel and agents, who authorized, planned, approved, and executed (1) the transfer of prisoners, (2) the preparation, manner, and procedures used for the transfer, (3) the response to the COVID-19 outbreak at San Quentin, (4) the response or lack thereof to the serious medical needs of prisoners and staff at San Quentin due to the outbreak, (5) any plan or response to screen and test prisons and staff for COVID-19, (6) provision for the care, safety, treatment, medical needs, and rights of San Quentin staff and prisoners, (7) all decisions regarding how or whether to address issues concerning staff and prisoners' rights, and (8) all decisions to require or permit claimant to live and work in unreasonably dangerous conditions. *Id.*

Plaintiff seeks to sue all of the above individuals, including but not limited to the ones he identifies by name, as well as "CIM Medical Directors/ Executives" and "all individuals mentioned in the OIG Reports with responsibility for the transfer of prisoners to San Quentin and handling of the COVID-19 outbreak at San Quentin." He also refers to "administrative and supervisory personnel connected with CDCR, CCHCS, San Quentin, CIM and the State of California whose identities and titles currently are unknown to Claimant and whose decisions and/or conduct may have harmed claimant." *Id.*

Plaintiff alleges the following in the complaint.

On May 30, 2020, the California Department of Corrections and Rehabilitation (CDCR) knowingly transferred 122 vulnerable prisoners from CIM, where there were high COVID rates, to SQSP, which had zero COVID cases. Dkt. No. 1 at 13. CDCR did not quarantine or test the prisoners 3 to 4 weeks prior to transfer. *Id.* at 14. Upon arrival at SQSP, staff ignored the transfer

4

procedures and medical protocols issued by federal and state health officials. *Id.* They housed the transferred prisoners with 200 SQSP prisoners who did not have COVID. 25 of the transferred prisoners were positive for COVID-19. *Id.* Staff moved symptomatic prisoners around the cell blocks, causing 457 prisoners to contract COVID in 29 days. *Id.* Plaintiff contracted COVID. *Id.* at 12.

Plaintiff alleges that defendants' conduct was deliberate indifference to his safety in failing to adequately quarantine, screen, and test the transferred prisoners. *Id.* at 14-15.

Plaintiff seeks compensatory and punitive damages.

Liberally construed, plaintiff's allegations state a plausible claim for deliberate indifference to plaintiff's safety, in violation of the Eighth Amendment, against the named defendants in their individual capacities. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff also alleges plausible state law general negligence and intentional tort claims. Under California law, "there is no independent tort of negligent infliction of emotional distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). The tort is negligence. *Id*. A negligent infliction of emotional distress claim is only available where the "defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object," and "recovery is available only if the emotional distress arises the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id.* at 985. Here, defendants have a duty to plaintiff as a prisoner under state tort law. California "[c]ase law holds that 'there is a special relationship between jailer and prisoner, imposing on the former a duty of care to the latter'." *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1389–90 (2010) (quoting *Giraldo v. Department of Corrections & Rehabilitation*, 168 Cal. App. 4th 231, 250 (2008)). Plaintiff alleges that the emotional distress arose out of defendants' breach of their duty to him by exposing him to COVID-19.

But plaintiff's claims cannot proceed against the State of California, CDCR, or CCHCS because they are barred by the Eleventh Amendment. The Eleventh Amendment bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). This prohibition extends to state agencies like CDCR

and CCHCS.  *See Aranda v. Martel*, 416 F. App'x 651 (9th Cir. 2011) ("The [CDCR], as a state agency, is immune from suit under the Eleventh Amendment").  Further, state agencies including CDCR are not "persons" within the meaning of, and cannot be liable under, section 1983.  *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365(1990).

Nor can his claims proceed against Steven Tharratt.  The Court understands, as the Attorney General has represented to another court in this district, that "[t]o the best of [the Attorney General's] knowledge, [Dr.] Tharratt died on August 20, 2020."  *See* Case No. 3:20-cv-07845-CRB, Dkt. Nos. 37, 37-1.  The Court takes judicial notice pursuant to Federal Rule of Evidence 201 of the filing in that case, which attaches Dr. Tharratt's obituary published on the California Department of Corrections and Rehabilitation website on October 6, 2020, *available at* https://www.cdcr.ca.gov/insidecdcr/2020/10/06/dr-robert-tharratt-longtime-cchcs-medical-director-passes-away/.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (federal courts "may take judicial notice of court filings and other matters of public record"); *Bullock v. Johnson*, No. CV 15-2070 PA (AS), 2018 WL 5880736, at *13 n.19 (C.D. Cal. Aug. 10, 2018), report and recommendation adopted, No. CV 15-2070 PA (AS), 2018 WL 4791089 (C.D. Cal. Oct. 3, 2018) (taking judicial notice of CDCR obituary).

Dr. Tharratt's death therefore preceded the filing of this action.  *See* Dkt. No. 1.  "[A] party cannot maintain a suit on behalf of, or against, or join, a dead person, or in any other way make a dead person (in that person's own right, and not through a properly represented estate or successor) party to a federal lawsuit." *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 955 (9th Cir. 2020).  Defendant Tharratt was therefore not an appropriately named Defendant at the onset of this litigation and will be dismissed.

Nor can plaintiff's claims proceed against the overinclusive variety of unnamed individuals whom plaintiff refers to.  Plaintiff may later move to amend his complaint to name additional defendants.

## MOTION TO APPOINT COUNSEL

"Generally, a person has no right to counsel in civil actions."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  "However, a court may under 'exceptional circumstances' appoint

6

counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Id.* (citing *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v. Agyeman*, 545 U.S. 1128 (2005)). A finding of "exceptional circumstances" requires an evaluation of the likelihood of the plaintiff's success on the merits and of the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. *See Agyeman*, 390 F.3d at 1103. Both factors must be viewed together before reaching a decision on a request for counsel under § 1915. *See id.*

Plaintiff may be likely to succeed on the merits of some of his claims, but he is able to articulate his claims adequately at the present stage of the case, and his case is currently stayed for all purposes except service. His motion is denied without prejudice to the Court's later sua sponte appointment of counsel, should the Court determine the exceptional circumstances are present to warrant it.

## CONCLUSION

1. Defendants CDCR, SQSP, and CCHCS are dismissed.
2. Defendant Tharratt is dismissed.
3. Plaintiff's motion to sever (Dkt. No. 59 in case No. 20-cv-06326-EJD) is denied.
4. Plaintiff's motion for appointment (Dkt. No. 100 in Case No. 20-cv-06326-EJD) is denied.
5. The Court orders that service on the following defendants shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") e-service program for civil rights cases from prisoners in the CDCR's custody:

    i. Ralph Diaz
    ii. Ron Davis
    iii. Clarence Cryer
    iv. Alison Pachynski
    v. Shannon Garrigan
    vi. Kathleen Allison
    vii. Ronald Broomfield

    viii. J. Arnold

     ix. Dean Borders

      x. Dr. Joseph Bink

In accordance with the program, the clerk is directed to serve on the CDCR via email the following documents: the operative complaint (Dkt. No. 1), this Order of Service, a CDCR Report of E-Service Waiver form, and a summons. The clerk also shall serve a copy of this order on the Plaintiff.

No later than 40 days after service of this order via email on the CDCR, the CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the USMS and which defendant(s) decline to waive service or could not be reached. The CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-285 Form. The clerk shall provide to the USMS the completed USM-285 forms and copies of this order, the summons and the operative complaint for service upon each defendant who has not waived service. The clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

  6. All defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if defendants, after being notified of this action and asked by the Court, on behalf of plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause can be shown for their failure to sign and return the waiver form.

  7. All communications by plaintiff with the Court must be served on defendants' counsel by mailing a true copy of the document to defendants' counsel. The Court may disregard

any document which a party files but fails to send a copy of to his opponent. Until defendants' counsel has been designated, plaintiff may mail a true copy of the document directly to defendants, but once defendants are represented by counsel, all documents must be mailed to counsel rather than directly to defendants.

8. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

10. The case will remain stayed for all purposes other than service of the complaint on defendants.

11. This Order terminates Docket Numbers 59 and 100.

**IT IS SO ORDERED.**

Dated: December 20, 2024

EDWARD J. DAVILA
United States District Judge