UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE CIM-SQ TRANSFER CASES

This Document Relates To:

ALL ACTIONS

Case No.   20-cv-06326-EJD

**ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA DEFENSE**

Re: ECF No. 233

Before the Court is Defendants' motion to dismiss or exclude certain Plaintiffs from this litigation based on *res judicata*.  Defs.' Opening Br., ECF No. 233.  Plaintiffs filed an Opposition, and Defendants filed a Reply.  Opp., ECF No. 266; Reply, ECF No. 273.  The Court requested additional briefing, ECF No. 367, in response to which Plaintiffs and Defendants filed supplemental briefs.  Dfs.' Supp. Br., ECF No. 370; Pls.' Supp. Br., ECF No. 371.  For the reasons below, the Court **DENIES** Defendants' motion.

## I.      BACKGROUND

In May 2020, in the early months of the COVID-19 pandemic, a group of 122 inmates from the California Institution for Men ("CIM") were transferred to San Quentin[1].  *See* Defendants' Request for Judicial Notice ("Dfs.' RJN") Ex. J, ECF No. 234 at 25.  COVID-19 was spreading rapidly at CIM, so the arrival of the CIM inmates at San Quentin touched off a massive

[1] The institution previously known as San Quentin State Prison now is called San Quentin Rehabilitation Center, but for clarity it is referred to herein only as "San Quentin."

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
1

outbreak of the disease. *Id*. at 25–32. A group of approximately 400 inmates ("Impacted Plaintiffs") brought petitions for habeas corpus in Marin County Superior Court to address conditions at San Quentin. *See* Dfs.' RJN, Exs. A-HH (the "*Von Staich* proceedings"). The Marin County Superior Court found that the prison had been deliberately indifferent to both the inmate transfer and to COVID precautions. Dfs.' RJN, Ex. J, at 95–96. But because no constitutional violations persisted by the time the court issued its ruling, the court granted relief in the form of a declaration that the petitioners' rights had been violated but denied as moot any requests for affirmative relief. *Id.*

Impacted Plaintiffs and their successors in interest have sued former San Quentin Warden Ron Broomfield ("Defendant Broomfield") and various other California Department of Corrections and Rehabilitation ("CDCR") officials in this Court under 42 U.S.C. § 1983, seeking damages related to their contraction of COVID-19. These cases include a putative class action that has been conditionally certified for Phase 1 in this consolidated action. Defs.' Opening Br. at 4.

Defendants now contend that the state court case precludes Impacted Plaintiffs' claims. *Id*. at 1. Defendants ask that Impacted Plaintiffs "be excluded from any class that the Court certifies, and any individual actions filed by Impacted Plaintiffs . . . be dismissed." *Id.*

## II.    REQUEST FOR JUDICIAL NOTICE

Before turning to the motion to dismiss, the Court will first address the request for judicial notice. In general, a court may not consider material beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018). The only exceptions to this rule are documents that are the subject of judicial notice, appended to the complaint, or incorporated by reference. *Id.*

Judicial notice permits courts to consider facts that are not subject to reasonable dispute.

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
2

*Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201). A court may also consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, 2016 WL 368153, at \*3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)). More specifically, courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979); and collecting other authorities).

None of the documents are subject to reasonable dispute. And they arise from the court proceedings that form the basis of Defendants' *res judicata* defense. Consequently, the Court takes judicial notice of Exhibits A–HH.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether to grant the motion, the court must generally accept as true all "well-pleaded factual allegations," *id.* at 664, and construe the alleged facts and inferences in the light most favorable to the plaintiff, *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

#### B. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c)

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
3

motion challenges the legal sufficiency of the opposing party's pleadings.  Judgment on the pleadings is appropriate when, even if all material facts in the pleadings are true, the moving party is entitled to judgment as a matter of law.  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

On a motion for judgment on the pleadings, "all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).  "A motion for judgment on the pleadings may be granted if, after assessing the complaint and matters for which judicial notice is proper, it appears 'beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief.'" *Williams v. Nichols Demos, Inc.*, 2018 WL 3046507, at \*3 (N.D. Cal. June 20, 2018) (citing *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1155 (E.D. Cal. 2006)). In other words, the standard for a Rule 12(c) motion is essentially the same as that for a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

Rule 12(c) may be used to challenge individual causes of action, as well as affirmative defenses. *See Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005); *Spears v. First Am. eAppraiseIt*, 2013 WL 1748284, at \*6 (N.D. Cal. Apr. 23, 2013) (noting that affirmative defenses are evaluated for sufficiency under the same "plausibility" standard, regardless of whether challenged under a Rule 12(c) or Rule 12(f) motion); *F.T.C. v. Meta Platforms Inc.*, 2022 WL 16637996, at \*1 (N.D. Cal. Nov. 2, 2022) ("In this district, defendants provide 'fair notice' of an affirmative defense by meeting the *Twombly*/*Iqbal* pleading standard.").

## IV.    DISCUSSION

Res judicata "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1230 n.3 (9th Cir. 2014) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). "The Federal Full Faith and Credit statute, 28 U.S.C. § 1738, requires federal courts to 'give to a

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
4

United States District Court
Northern District of California

state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Id.* at 1230 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  Here, the prior action was in California state court. Consequently, California preclusion law governs the analysis.

Under California law, claim preclusion applies when three requirements are met: (1) the prior proceeding resulted in a final judgment on the merits, (2) the present action is on the same cause of action as the prior proceeding, and (3) the party to be precluded was a party in the prior proceeding or in privity with a party in the prior proceeding.  *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010) (citations omitted).  California law also recognizes a public policy exception to claim preclusion: a final judgment in a prior action "may be denied claim preclusive effect when to do so would result in manifest injustice."  *F.E.V. v. City of Anaheim*, 15 Cal. App. 5th 462, 465 (2017); *see also Slater v. Blackwood*, 543 P.2d 593, 595 (Cal. 1975) ("in particular circumstances, courts may refuse to apply res judicata when to do so would constitute a manifest injustice.").

In this case, the second and third elements—same cause of action and privity—are at issue. (The parties do not dispute that the *Von Staich* proceedings resulted in a final judgment on the merits.)  The parties also disagree over whether the public policy exception should apply in this case.  The Court addresses the cause of action element, the privity element, and the public policy exception in turn.

### A.    Same Cause of Action

California courts use the "primary rights" theory to determine what constitutes the same cause of action for claim preclusion purposes.  *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009).  "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake."  *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612,

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
5

United States District Court
Northern District of California

614 (Ct. App. 1983) (collecting cases).  First, the Court will address Defendants' theory and Plaintiffs' counterarguments.  Then, the Court will turn to Plaintiffs' theory and Defendants' counterarguments.

Defendants argue that the state habeas case and the federal § 1983 case involve the same primary right: deficient conditions at San Quentin violated prisoners' constitutional rights.  Defs.' Opening Br. at 6; Defs.' Supp. Br. at 1–2.  In support of this argument, Defendants analogize to two Ninth Circuit cases and one Ninth Circuit memorandum of disposition.  *Gonzales v. California Dep't of Corr.*, 739 F.3d 1226 (9th Cir. 2014); *Furnace v. Giurbino*, 838 F.3d 1019 (9th Cir. 2016); *Morales v. Cate*, No. 18-15009, 2022 WL 337153 (9th Cir. Feb. 4, 2022).

In *Gonzales*, a California prisoner was placed in a secured housing unit due to his gang membership.  *Gonzales*, 739 F.3d 1226.  The prisoner filed a habeas petition challenging the evidentiary basis for his confinement, which the state court denied.  *Id.* at 1229.  The prisoner then sued under § 1983.  *Id.*  He maintained that the habeas claim, which challenged the fact of his confinement, should not preclude the § 1983 claim, which challenged the conditions of his confinement. The Ninth Circuit disagreed, writing, "That he seeks a different remedy or asserts a different legal theory in his current challenge is irrelevant under California's claim preclusion doctrine." *Id.* at 1234.  The primary right was the liberty interest in being free from the secured housing unit, and the harm suffered was his detention in the secured housing unit.

The facts in *Furnace* were similar: a California prisoner placed in a secured housing unit due to his gang membership filed a state habeas petition.  *Furnace*, 838 F.3d 1019, 1022.  After the habeas petition was denied, the prisoner filed a § 1983 claim, requesting monetary damages and declaratory and injunctive relief.  *Id*. at 1023.  Citing *Gonzales*, the Ninth Circuit found that the state habeas case barred the § 1983 claim.  "A plaintiff's primary right," the court reasoned, "is the 'right to be free from the particular injury suffered' and 'must therefore be distinguished from

United States District Court
Northern District of California

the *legal theory* on which liability for that injury is premised.'" *Furnace*, 838 F.3d at 1025 (citing *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 904 (2002)). The prisoner's primary right—to be free from the secured housing unit—and the harm he suffered—the harm of being detained in the unit—were the same. *Id.* at 1025.

Finally, Defendants analogize to *Morales*, an unpublished Ninth Circuit memorandum of disposition. *Morales*, 2022 WL 337153. In that case, the Ninth Circuit affirmed the district court in finding that a state habeas case precluded a § 1983 claim. In a key line, the Ninth Circuit noted that in *Gonzales* and *Furnace*, the Ninth Circuit had "rejected as 'irrelevant' the fact that a plaintiff 'could not have obtained damages in his prior habeas action.'" *Id.* at *1 (citing *Furnace*, 838 F.3d at 1025; *Gonzales*, 739 F.3d at 1232).

These three cases—and *Morales*, in particular—form the core of Defendants' argument. They clearly state that the type of relief available in each claim does not factor into the analysis of whether those claims address the same primary right. Defendants thus argue that "[i]t does not save Impacted Plaintiffs' instant claims that their prior actions did not, and could not, have sought monetary damages." Defs.' Opening Br. at 6. As Defendants would have it, when a plaintiff "pursue[s] a second action involving the same alleged injury caused by the same alleged wrongs . . . the two actions involved the same primary right." *Id.*

Plaintiffs distinguish *Gonzales* and *Furnace* from the case before the Court. Opp. at 6–7. In *Gonzales*, the Ninth Circuit acknowledged that "a challenge to the conditions of Gonzales's confinement would present a different cause of action than a challenge to the fact of his confinement." *Gonzales*, 739 F.3d at 1234. According to Plaintiffs, this shows that "there are scenarios in which a habeas proceeding may involve a different primary right than a claim for damages with an overlapping factual predicate." Opp. at 6. In *Furnace*, the Ninth Circuit determined that both the habeas and the civil rights proceedings challenged the lawfulness of the

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
7

plaintiff's placement in a secured housing unit. *See Furnace*, 838 F.3d at 1027. Plaintiffs argue that "implicit in *Furnace* is that different injuries at issue in different proceedings, as the case is here, would involve different primary rights." Opp. at 7 (citing *Boeken*, 48 Cal. 4th at 798 ("[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.")).

Plaintiffs also address *Morales*, the Ninth Circuit memorandum of disposition. *See* Opp. at 7 n.3. They claim *Morales* is inapposite: the *Morales* plaintiff conceded that the elements of claim preclusion had been met, but wanted the court to apply a generalized exception to claim preclusion when damages were not available in the prior proceeding—"an overbroad argument that Impacted Plaintiffs do not advance" in the case before the Court. *Id*.

The Court finds that *Gonzales* and *Furnace* do not speak directly to the case at hand. In those cases, the plaintiffs lost their habeas case, so the conditions of their confinement did not change. Allowing those plaintiffs to proceed with § 1983 claims would have risked awarding them damages for the very conditions that the state court found did not violate their rights. Here, however, Plaintiffs won their state habeas case. As a result, there is no risk of a similarly inconsistent outcome.

At first blush, *Morales* seems to be more instructive. There, as here, the plaintiff won his habeas case. Yet the Ninth Circuit nonetheless found the habeas case barred the § 1983 suit, stating that it does not matter whether a plaintiff won or lost their state habeas case before filing their § 1983 case. *Morales*, 2022 WL 337153, at *1. To Defendants, this line is critical: it says that the type of relief available in each claim does not factor into the analysis of whether those claims address the same primary right. Defs.' Opening Br. at 6.

But the Court finds that the Ninth Circuit's reasoning in *Morales* does not align with its

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
8

United States District Court
Northern District of California

prior decision in *Furnace*. In *Morales*, the Ninth Circuit wrote, "The reasoning in neither *Gonzales* nor *Furnace* suggests that the application of California's claim preclusion rule turns on whether the petitioner prevailed in the prior state habeas proceeding." *Id.* That is not consistent with the text of *Furnace*, which spent two and a half paragraphs discussing the risk of inconsistent outcomes. *See Furnace*, 838 F.3d at 1026–27 ("Having lost his habeas case, Furnace has made a new run at the officials through § 1983. . ."). The *Furnace* court acknowledged that *Heck v. Humphrey*—which held that prisoners challenging the fact of their confinement must exhaust state habeas remedies before filing a § 1983 claim—was not directly on point in *Furnace*, where the prisoner was challenging the conditions of his confinement. *Id.* at 1026 (citing *Heck v. Humphrey*, 512 U.S. 477, 486 (1994)). But the Ninth Circuit used the *Heck* principle to help "focus in this case," reasoning that "if [Furnace] were successful on his § 1983 claim against the officials who put him in the [secured housing unit], it would necessarily be inconsistent with the judgment that he was not entitled to habeas relief." *Id.* at 1026–27. In sum, *Furnace* turned on the risk of inconsistent outcomes. *Morales* was inconsistent with that position when it said that it does not matter whether a plaintiff won or lost his state habeas case before filing his § 1983 case.

In sum, the Court finds that none of the Ninth Circuit cases—*Gonzales*, *Furnace*, and *Morales*—indicate whether a successful state habeas case bars a subsequent § 1983 suit for damages.[2]

Though no controlling authority is on point, Defendants do cite one case where a court

---

[2] In their supplemental briefing, Defendants point to three further cases where courts found that a prior habeas case precluded a later § 1983 case. Defs.' Supp. Br. at 2 (citing *Horton v. Bradbury*, No. C 16-6411 WHA (PR), 2017 WL 8793339, at *2–3 (N.D. Cal. Dec. 7, 2017), *aff'd*, 735 F. App'x 397 (9th Cir. 2018); *Kramer v. Medvin*, No. 15-CV-03780-HSG, 2017 WL 1196820, at *9 (N.D. Cal. Mar. 31, 2017); *Moreno v. Gore*, No. 13-CV-2186 DMS MDD, 2014 WL 2779815, at *4 (S.D. Cal. June 19, 2014)). In all three of these cases, however, the plaintiff lost his initial habeas case. These cases thus offer no better guidance for the case at hand than do *Furnace* or *Gonzales*.

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
9

found that a successful habeas suit barred a later § 1983 suit.  Defs.' Opening Br. at 6 (citing *Escareno v. Sherman*, No. 1:19-CV-00881-BAM-PC, 2019 WL 5260425 (E.D. Cal. Oct. 17, 2019), *report and recommendation adopted,* No. 1:19-CV-00881-LJO-BAM-PC, 2019 WL 6114577 (E.D. Cal. Nov. 18, 2019)).  In *Escareno*, a prisoner who was forced to eat in a leaky, moldy prison dining hall successfully petitioned for writ of habeas corpus.  *Id.*  The prisoner then sued under § 1983 seeking damages for the same Eighth Amendment violation.  The court ruled that "even though Plaintiff seeks different relief in this § 1983 action (monetary damages), he has pled the same theory of recovery under the Eighth Amendment and he is pursuing a claim based on the same injury (his health and safety) and the same wrong (the failure of prison officials to ensure his health and safety)," and thus concluded that the habeas case precluded the § 1983 case. *Id.* at *3.  *Escareno* thus concluded that the habeas injury—the violation of the prisoner's Eighth Amendment rights—was the same as the § 1983 injury—that the mold exposure violated the Eighth Amendment.

As the *Escareno* court and now Defendants would have it, a state habeas claim challenging the conditions of confinement always precludes a later § 1983 claim.  In theory, that would leave two options for prisoners who seek damages and an injunction.  The first option would be to join their habeas petition to their § 1983 suit.  But the Ninth Circuit has not offered clear guidance on whether this is possible.  In the body of its opinion in *Furnace*, the Ninth Circuit opined, "We know of no reason . . . that Furnace could not have brought his § 1983 action instead of his state habeas action . . . or, even better, joined his habeas and § 1983 actions to seek alternative forms of relief." *Furnace*, 838 F.3d at 1026 (citing *Shoemaker v. Harris*, 214 Cal. App. 4th 1210 (2013); Cal. Penal Code § 1473(d)).  But in a footnote, the Ninth Circuit also noted, "We offer no definitive opinion whether, under California law, Furnace could, in fact, have brought both an action in habeas and a § 1983 claim in the same suit, nor do we offer any opinion whether Furnace

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
10

could have decided to forego his habeas action and bring only a § 1983 suit. What we hold is that he cannot bring them *seriatim*." *Id.* at 1026 n.3. And as Plaintiffs point out, there is no clear mechanism for joining a habeas action, which is a special proceeding of a criminal nature, with a § 1983 claim. Pls.' Supp. Br. at 4–5. And even if it were possible to join the two claims, Plaintiffs argue that habeas petitions move faster than § 1983 suits, so the habeas petition—were it given preclusive effect—would almost always end up precluding the damages claim. *Id.* at 5.[3] Consequently, it does not seem that joining a habeas petition to a § 1983 claim is really an option at all.

The second option would be to file a § 1983 suit seeking injunctive relief and damages. Indeed, this is what Defendants suggest Plaintiffs should have done here. *See* Defs.' Supp. Br. at 3. Defendants quote the Supreme Court in writing, "Section 1983 by its terms confers authority to grant equitable relief as well as damages." *Id.* (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976)). But the second half of that sentence limits the first half, continuing, "but its words 'allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding.'" *Id*. Moreover, *Rizzo* predates *City of Los Angeles v. Lyons*, where the Supreme Court held that to have standing for an injunction, a plaintiff must demonstrate a "real and immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 96 (1983). If Mr. Lyons, a Black man, could not establish "a real and immediate threat that he would again be stopped . . . by an officer who would illegally choke him into unconsciousness," then it seems unlikely that Plaintiffs here could have established a "real and

---

[3] Plaintiffs also contend that for res judicata to apply, the first action must have had the power to give the plaintiff all the relief to which she was entitled. *Id*. But Plaintiffs only cite two cases (from 1911 and 1952), in both of which the court found the prior action *did* give the plaintiffs all the relief to which they were entitled and, as a result, applied res judicata. *Id*. (citing *Abbott v. 76 Land & Water Co.*, 161 Cal. 42, 48 (1911); *Orloff v. Hollywood Turf Club*, 110 Cal. App. 2d 340, 345 (1952)).

immediate threat" of suffering Eighth Amendment violations during some future global pandemic. *Id*.

The above analysis makes it clear that Defendants' position, were it to become the rule, would seriously restrict the role of habeas in prison litigation. If *Rizzo* and *Lyons* disallow injunctive relief under § 1983, prisoners challenging the conditions of their confinement would be forced to choose between an injunction (through habeas) or damages (through § 1983). And if *Lyons* allows prisoners to pursue an injunction under § 1983, then there would seem to be no point in filing a habeas petition. Either outcome undermines the role of habeas in challenging the conditions of a prisoner's confinement.

The discussion thus far has largely centered on Defendants' theory that the habeas case and the instant § 1983 case involve the same primary right: deficient conditions at San Quentin violated prisoners' constitutional rights. The Court now turns to Plaintiffs' argument: that "California law draws a distinction between the primary right to a certain condition and a primary right to damages arising from the denial of that condition." Opp. at 4–5.

Plaintiffs cite two cases in support of this proposition. In *Craig v. County of Los Angeles*, 221 Cal. App. 3d 1294 (Ct. App. 1990), the court found that a prior mandate proceeding to compel a sheriff's office to comply with an order to hire the plaintiff did not bar a later action for violation of his civil rights under § 1981 and § 1983. *See id.* at 1301–03. The court reasoned that the primary right in the mandate action was "the right to be employed as a Harbor Patrol officer," and thus the "later action to recover damages because of the denial of that right involves a different primary right." *Id.* at 1301. Plaintiffs also cite to *Daugherty v. Board of Trustees*, 111 Cal. App. 2d 519 (1952). In that case, the trial court granted a teacher a writ of mandate to reinstate her and to fix her salary at a certain rate. *Id.* at 520–21. In a second action, the teacher sought to recover her lost salary. On appeal, the court found that different primary rights were at issue in the two

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
12

cases: the purpose of the first proceeding was "to compel admission of petitioner to the enjoyment of a right to which she was entitled," whereas the second proceeding was "to compel the performance of an act which the law specifically enjoins as a duty . . . viz: the payment of petitioner's salary." *Id.* at 522.

Plaintiffs contend that the case here is similar: in state court, the primary right was the right to be free from Eighth Amendment violations, whereas here, the primary right is the right to damages for those violations.  Opp. at 5–6.  On the one hand, *Daugherty* differs from the instant case in that the money in that case was the salary that the plaintiff had been denied, whereas here, the money at issue is a separate claim for damages.  But Plaintiff is right that both *Daugherty* and the case before the Court feature a first case about rights and a later case about money damages.  And in *Craig*, Plaintiffs have offered another example of two different rights arising from the same set of facts: the primary right to a condition and the primary right to damages arising from the denial of that condition.

***

To summarize, Defendants maintain that *Gonzales* and *Furnace* stand for the proposition that a final decision on a habeas petition precludes a § 1983 suit.  Defendants believe—and *Morales* says—that this is true regardless of what type of relief was available and whether the plaintiff was successful in the habeas suit.  Yet in both *Gonzales* and *Furnace*, the plaintiffs lost their habeas case, whereas here, they won.  Thus, ruling on this case would not risk inconsistent outcomes as it would have done in *Gonzales* and *Furnace*.  And in *Morales*, where the plaintiff had prevailed in their habeas case, the Ninth Circuit seems to have based the finding of *res judicata* on a different of its own analysis in *Furnace*.

Perhaps Plaintiffs could have either joined their habeas and § 1983 actions or simply filed a § 1983 suit for damages and an injunction.  But the Ninth Circuit has not spoken clearly on

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
13

United States District Court
Northern District of California

whether a plaintiff can join a habeas and a § 1983 claim, and Plaintiffs likely would not have been able to demonstrate the real and immediate threat of future harm required to receive an injunction under § 1983. Thus, the Court is concerned that Defendants' position undermines the role of habeas in challenging the conditions of a prisoner's confinement.

Lacking guidance from the Ninth Circuit, and mindful of not wanting to undermine the role of habeas, the Court sides with Plaintiffs in finding that the primary right in the habeas case and the primary right here are distinct. To be sure, Plaintiffs' argument has its own deficiencies. The cases they cite show that the violation of a right and damages for that violation can be two distinct rights, but none of these cases are in the context of habeas and § 1983. Nonetheless, these cases seem more apposite than those that Defendants cite. As a result, the Court finds that there are two primary rights at issue here: the Plaintiffs' right to conditions that do not violate their Eighth Amendment rights, and Plaintiffs' right to damages for the violation of that right. On these grounds, Defendants' motion to dismiss or exclude based on *res judicata* is **DENIED**.

### B.    Privity

Claim preclusion only applies when prior litigation was against the same parties or parties in privity with them. *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 819 (2015). "'[P]rivity refers to some relationship or connection with the party that makes it proper to hold 'privies' bound with actual parties." *Grande v. Eisenhower Med. Ctr.*, 13 Cal. 5th 313, 323 (2022) (quoting Witkin, Cal. Procedure (5th ed. 2008) Judgments, § 456, p. 1113). Specifically, a "nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's 'virtual representative' in the first action." *DKN Holdings*, 61 Cal. 4th at 820 (quoting *Gottlieb v. Kest*, 46 Cal. Rptr. 3d 7 (Ct. App. 2006)).

In the *Von Staich* proceedings, the respondents were the CDCR and former San Quentin Warden Ron Broomfield in his official capacity. Opp. at 7. In the case before the Court, the

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
14

United States District Court
Northern District of California

United States District Court
Northern District of California

respondents are Defendant Broomfield and various other prison and CDCR officials in their individual capacities. Defs.' Opening Br. at 7. The issues here are thus (1) whether Defendant Broomfield in his official capacity is the same person as Defendant Broomfield in his individual capacity, and (2) whether the CDCR is in privity with Defendant Broomfield or various other prison and CDCR officials in their individual capacities.

Plaintiffs contend that the law on the first issue is clear: for the purposes of res judicata, a defendant who is sued in her official capacity differs from one who is sued in her individual capacity. The cases Plaintiffs cite support this notion. *See, e.g., Gavriiloglou v. Prime Healthcare Mgmt., Inc.*, 83 Cal. App. 5th 595, 603 (2022), *as modified on denial of reh'g*, (Sept. 20, 2022) ("For purposes of both issue preclusion and claim preclusion, identity of parties means not only that they must be identical in person, but that the capacity in which they appear must be the same."). So does the California Code of Civil Procedure. Cal. Civ. Proc. Code § 1908(a)(2) (judgment is conclusive "between parties . . .litigating the same thing under the same title and in the same capacity."). A case in the Southern District of California applied this principle, finding that res judicata only applied to defendants who had previously been sued in their individual capacities. *See Mir v. Kirchmeyer*, 2016 WL 2745338, at *8 (S.D. Cal. May 11, 2016); *see also Torres v. Diaz*, No. 1:14-CV-00492-DAD-SAB-PC, 2016 WL 4708489, at *2 (E.D. Cal. Sept. 8, 2016) ("privity is lacking where parties in the two suits have not been sued in the same capacity, because a defendant in his official capacity does not represent the same legal right as he does in an individual capacity."). The Court thus agrees with Plaintiffs that Defendant Broomfield in his official capacity (in the habeas case) is not the same person as he is in his individual capacity (in the instant case).

Defendants, however, prevail on the second issue: whether there is privity between the CDCR and Defendant Broomfield or various other prison and CDCR officials in their individual

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA

15

capacities. "Although these groups do not perfectly overlap," Defendants write, "the fact that all individuals are state employees . . . means that there is sufficient identity of interests for claim preclusion to apply." Defs.' Opening Br. at 7–8. To support this point, Defendants cite to cases that have found privity between a state hospital and its director, *Ford v. King*, No. 1:17-CV-00960-SKO-PC, 2017 WL 3537196, at *3 (E.D. Cal. Aug. 17, 2017), between a warden in a habeas petition and other employees in a subsequent federal action, *Nelson v. Brown*, No. 11-CV-2202-GPC-WVG, 2014 WL 1096189, at *8 (S.D. Cal. Mar. 19, 2014), and between the CDCR and an employee of the CDCR, *Rocha v. California Dep't of Corr. & Rehab.*, No. 1:14-CV-00842-BAM, 2014 WL 6685010, at *7 (E.D. Cal. Nov. 25, 2014). Defs.' Supp. Br. at 4 (citing *Escareno v. Sherman*, No. 1:19-cv-00881-BAM-PC, 2019 WL 5260425, at *4 (E.D. Cal. Oct. 17, 2019), *report and recommendation adopted*, 2019 WL 6114577 (Nov. 18, 2019) (collecting cases)).

*Rocha*, in particular, is instructive. There, the plaintiff had previously sued the CDCR for the violation of her Fourteenth Amendment rights. *Rocha*, 2014 WL 6685010, at *1. In a second case, the plaintiff sued an employee of the CDCR for his conduct while acting as the plaintiff's supervisor. *Id*. at *2–3. The court reasoned that CDCR's liability in the first case and the employee's liability in the second case were both predicated on the employee's wrongdoing. *Id.* at *8. As a result, the court found that the CDCR and the employee "share[d] a common interest in the claims at issue in both cases" and privity was satisfied. *Id*. Here, the case is similar. In the first case, Plaintiffs sued the CDCR. In this second case, they have sued employees of the CDCR and Defendant Broomfield for actions they took while working for CDCR. As a result, the CDCR's liability in the first case and the employees' and Defendant Broomfield's liability in the second case are both predicated on the employees' and Defendant Broomfield's alleged wrongdoing.

Defendants also analogize to *Escareno v. Sherman*. Defs.' Reply Br. at 3 (citing *Escareno*,

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
16

2019 WL 5260425).  There, the plaintiff petitioned for the writ of habeas corpus, naming CDCR as the respondent.  After he prevailed, he brought a § 1983 action against the warden of the facility in which he was incarcerated.  The plaintiff did not specify whether he was suing the warden in his official or individual capacity, but according to the court, it did not matter: privity existed between CDCR and the warden in his official and individual capacity.  *Escareno*, 2019 WL 5260425, at *4.  This case shows that privity exists between a state agency and its employee, regardless of whether the employee is named in their official or individual capacity.  Applying the same logic here, there is privity between the CDCR and Defendant Broomfield and the CDCR employees, all of whom were employed by the CDCR at the time of the alleged violation.

The Court concludes that though there is not privity between Defendant Broomfield in his official and individual capacities, there is privity between CDCR and its employees, including Defendant Broomfield.

### C.    Policy Exception

Under California law, "courts may refuse to apply res judicata when to do so would constitute a manifest injustice." *Slater*, 543 P.2d at 595.  The parties disagree over whether this limited exception applies to this case.

Defendants make two arguments.  First, they argue that the policy exception is applied "exceedingly rarely"; when it does apply, Defendants say it is because there is a change in law or circumstance that would contribute to a manifest injustice.  Defs.' Supp. Br. at 5 (quoting *Coleman v. CDCR*, No. 2:13-CV-1590-EFB P, 2014 WL 4446798, at *6 (E.D. Cal. Sept. 9, 2014)).  Even then, Defendants contend that the exception does not apply where "the only possible basis for its implementation is founded on a change in law following the original judgment." Defs.' Supp. Br. at 5 (citing *Slater*, 543 P.2d at 595).  Here, Defendants point out—and the Court agrees—that there has not been a change in law or in fact since the *Von Staich* proceedings

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
17

concluded.[4]

Second, Defendants argue that the failure to recover damages in a first claim is not a manifest injustice.  Defs.' Supp. Br. at 5–6.  But in the cases they cite to support that notion, damages were available in the prior case.  *Id*. (citing *Hi-Desert Med. Ctr. v. Douglas,* 190 Cal. Rptr. 3d 897, 915 (Ct. App. 2015) (declining to apply exception where the plaintiffs did not request monetary relief even though they could have); *Dagher v. Ford Motor Co.*, No. D072436, 2018 WL 4057400, at *6 (Cal. Ct. App. Aug. 27, 2018) (finding a plaintiff's "failure to recover is not sufficient to show manifest injustice" when claims were barred by earlier class action settlement)).  Here, they were not: habeas offers only injunctive and declaratory relief, not damages.   As a result, the Court is not convinced that the inability to recover damages in this case is not a manifest injustice.

For their part, Plaintiffs argue that the public policy exception should apply to the case before the Court for two reasons.  First, Plaintiffs contest Defendants' argument that the policy exception requires a change of law.  Plaintiffs say the exception has been applied in a variety of situations—most commonly "when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue."  Pls.' Supp. Br. at 8 (citing *Smith v. ExxonMobil Oil Corp.*, 153 Cal. App. 4th 1407, 1416 (2007) (internal quotations omitted)).  Plaintiffs say that because they did not—and could not—have pursued damages in the first proceeding, they did not have a full and fair opportunity to litigate the claim or issue.  Plaintiffs also remind the Court of the circumstances surrounding the *Von Staich* proceedings, which were

---

[4] Defendants also analogize to *Morales* in support of their argument.  There, the Ninth Circuit refused to apply the public policy exception, reasoning that "California has made a deliberate policy choice to afford claim-preclusive effect to habeas judgments and bar subsequent suits for damages."  *Morales*, 2022 WL 337153 at *2.  But it is not clear why the *Morales* plaintiff believed the exception applied to his case or why the Ninth Circuit believed it did not, and thus does not elucidate whether the exception should apply here.

expedited and held on Zoom in the early months of a global pandemic.  Opp. at 9.  They compare the situation here to *Villacres v. ABM Industries*, where the court found that since the plaintiffs' prior claims had been "commendably advanced," the public policy exception did not apply. *Villacres v. ABM Indus. Inc.,* 189 Cal. App. 4th 562, 592 (2010).  Plaintiffs contend that by contrast, "the obvious realities and constraints" of the state court proceedings did not afford them a "realistic opportunity to litigate damages on behalf of hundreds of petitioners."  Opp. at 9–10. Plaintiffs argue that to give such proceedings a preclusive effect would constitute a manifest injustice.

The Court agrees with Plaintiffs: under current law, it seems doubtful that Plaintiffs could have pursued both an injunction and damages.  *See supra* Part IV.A.  The Ninth Circuit has not clarified whether a plaintiff may join a habeas petition for an injunction to a § 1983 suit for damages.  *Id.*  And Impacted Plaintiffs likely would not have been able to establish a "real and immediate threat" of harm as is required to receive an injunction under § 1983.  *Id*. (citing *Lyons*, 461 U.S. at 96).  As a result, Plaintiffs did not have the "full and fair opportunity to litigate the claim or issue" of damages in the first proceeding.  *Smith v. ExxonMobil Oil Corp.*, 153 Cal. App. 4th at 1416.  This weighs in favor of applying the policy exception.

Second, Plaintiffs believe that granting the state court proceedings a preclusive effect would undermine the Impacted Plaintiffs' due process rights.  California courts have provided that "due process requires that the party to be estopped must have had a fair opportunity to pursue his claim the first time," and that the "principle behind the claim preclusion doctrine is that the parties have had a full and fair opportunity to litigate claims alleged in the first action."  *Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82, 92 (2006), *as modified* (Feb. 7, 2006); *Guerrero v. Dep't of Corr. & Rehab.*, 28 Cal. App. 5th 1091, 1098 (2018).  Plaintiffs argue that the expedited state court proceedings denied them the opportunity to either join their claim for

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
19

damages or bring the damages claim before and instead of the habeas petition.  Opp. at 10.

On this, too, the Court agrees with Plaintiffs.  Six years later, it is easy to forget how the pandemic upended the operation of the courts.  Courts limited who could enter courthouses and delayed or suspended jury trials, grand jury proceedings, and in-person hearings.  The pace of both criminal and civil proceedings slowed significantly.  Roy Germano, Timothy Lau & Kristin Garri, Fed. Judicial Ctr., *COVID-19 and the U.S. District Courts: An Empirical Investigation* (Oct. 2022), at 1, https://www.fjc.gov/sites/default/files/materials/11/22-1109_2-COVID19_and_the_US_ District_Courts.pdf.  Habeas litigants, in particular, suffered acutely: prison law libraries closed, in-person meetings with counsel were suspended, and inmates often did not have access to the technology they needed to participate meaningfully in their own hearings.

As the disease tore through San Quentin, Impacted Plaintiffs turned to the courts for relief.  Apparently, they believed that habeas offered the best chance at improving conditions and surviving the outbreak.  In that context, the Court cannot blame Impacted Plaintiffs for failing to consider whether the habeas petition—their lifeline—would later preclude a claim for damages.  Thus, even though Impacted Plaintiffs prevailed in their habeas petition, the Court agrees that the pandemic denied them "a fair opportunity to pursue [their] claim[s]" for damages the first time.  *Rodgers*, 136 Cal. App. 4th at 92.

Courts rarely apply the policy exception to *res judicata*.  But here, Impacted Plaintiffs likely could not have pursued an injunction and damages.  And the pandemic severely restricted prisoners'—including Impacted Plaintiffs'—access to the justice system, including the opportunity to contemplate the res judicata implications of their habeas suit.  Consequently, the Court finds that it would be a manifest injustice for the *Von Staich* proceedings to preclude the instant case.  But because the Court has already found that the instant case does not implicate the

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
20

United States District Court
Northern District of California

same primary right as the *Von Staich* proceedings, its holding does not turn on the policy exception.

## V.    CONCLUSION

The Court finds that the primary right at issue in the *Von Staich* proceedings differs from the primary right at issue in these proceedings and thus **DENIES** Defendants' motion.  The Court also finds that the manifest injustice policy exception applies to this case, but the Court does not rest its decision on those grounds.

**IT IS SO ORDERED.**

Dated: March 20, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-06326-EJD
ORDER DENYING THE MOTION TO DISMISS OR EXCLUDE BASED ON RES JUDICATA
21